THE STATE EX REL. N. C. FOSTER LUMBER COMPANY, Appellant, vs. WILLIAMS, Village Clerk, Respondent.

*September 29—October 18, 1904.*

Certiorari *to nonjudicial bodies: When evidence reviewed: Taxation: Valuation by assessor: Board of review: Weighing evidence: Presumptions: Courts: Appeal and error: Supervisor of assessments: Witnesses: Competency.*

1. The scope of the writ of *certiorari* to a nonjudicial body is not as broad as a writ of error as to permitting a review of evidence, and if there is reasonable ground for belief that the body's conclusion is the result of honest judgment it cannot be disturbed.

2. A nonjudicial body, up to the dividing line between error in the exercise of discretion and judicial error, has ample opportunity to make erroneous decisions, from which the aggrieved party has no opportunity for relief. If a remedy should be afforded, it is for the legislature to provide, and not for the courts by changing the scope of the common-law writ of *certiorari.*

3. On *certiorari* to a board of review, in the absence of evidence to impeach it, the assessor's valuation is presumed to be correct, and, upon the evidence produced to support or overcome that presumption, no mistake or error of the board, honestly made in deciding thereon according to their judgment, warrants judicial review of the decision.

4. In such case, the court must look into the evidence far enough to see whether in any reasonable view thereof, in the light of correct rules of law, it furnished a substantial basis for the board's action, and, having discovered that, the court has exercised its legitimate function in respect thereto.

5. Where the trial court on *certiorari* to a board of review has passed adversely to the contention of relator, on appeal the want of legitimate basis in the evidence for the board's decision must appear very clearly and satisfactorily, although the decision may seem clearly against the great preponderance of the evidence.

6. In proceedings before a board of review to reduce the assessor's assessment, the board is not bound to accept as true the evidence upon one side or that of the other, but may, in the exercise of its judgment, disregard the evidence on both sides, and fix a valuation between the two extremes.

7. In proceedings before a board of review to reduce the assessor's valuations, one item was a sawmill. The evidence of the owner bore mainly on what the sawmill property was worth to disorganize it and dispose of its parts. The testimony chiefly relied upon by the board to support the assessor's valuation was what the property, as an entirety, and as a going concern, would ordinarily sell for at private sale, assuming that a buyer, with the same opportunity for the use of the mill as the present owner, was at hand and had the means to buy it. *Held*, that the evidence to support the assessor's valuation was much nearer the statutory basis prescribed by sec. 1052, Stats. 1898, i. e., the full value that could ordinarily be obtained for the property at private sale.

8. In proceedings before a board of review to reduce the assessor's valuation, one item was a stock of lumber. The result testified to by a witness produced by the relator and witnesses produced by the assessor varied several million feet, but neither of the results was more than an estimate. *Held*, that while the method of estimation adopted by the relator's witness appeared better calculated to reach a correct result, it could not be said that the method adopted by the assessor was so unlikely to reach an approximately correct result that the evidence thereof was not entitled to consideration, and hence the board was not without warrant in reaching its conclusion.

9. In proceedings before a board of review to reduce the assessor's valuation, one item was the value of relator's sawlogs. Relator estimated the amount thereof on May 1, by taking from the log stock secured for the season, the amount of lumber manufactured therefrom, on an estimated cut of the mill

per day. Relator did not furnish any evidence of the lumber actually cut out of the logs, nor any evidence of how the scale of the lumber compared with the log scale. The assessor made his valuation on an estimate from inspection and statements of the relator's agents. *Held,* that the board were not entirely without warrant in reaching the conclusion which they did, and that their valuation should stand.

10. The supervisor of assessments is not authorized to make assessments, or substitute his judgment for that of the assessor.

11. A supervisor of assessments is a competent witness to give testimony before a board of review, and the fact that in giving his testimony he was in the attitude of supporting his own judgment, recorded in the assessment roll, goes to the weight of his testimony, but not its competency.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

*Certiorari* to the board of review of the village of Fairchild to obtain an examination of its proceedings respecting the assessment for taxation of the property of the *N. C. Foster Lumber Co.*

The facts involved in the litigation, so far as necessary to an understanding of the questions examined and decided, are sufficiently referred to in the opinion.

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

For the respondent there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

MARSHALL, J.    This appeal involves the question of whether the board of review of the village of Fairchild committed jurisdictional error in valuing the relator's property for taxation. We have a long record before us. There are some 300 printed pages of evidence upon which the board made the decision complained of. It is claimed that such decision on many points is so manifestly wrong as to be jurisdictionally defective. We are urged to examine the evidence in detail, to review and weigh it to determine whether it preponderates in favor of or against the board's conclusion. We

have responded thereto as fully as the nature of the case will permit. We have not gone as far as requested because settled legal principles barred the way.

Before giving attention in detail to the valuations complained of, it seems best to consider the proposition advanced by counsel as to the rule to be observed. It is contended that the scope of the writ of *certiorari* to a nonjudicial body, as in this case, is as broad as a writ of error, as to permitting a review of evidence. While the learned counsel refer to many of our recent decisions to sustain that, they are not understood here to have that effect. In a number of instances the question now presented was so thoroughly discussed that it does not seem that new light can be shed on the subject. It has been said over and over again in terms or in effect, in the circumstances of this case, that the board must decide on evidence and according thereto; that a decision one way where the evidence is all the other way, or to increase the value of property without evidence, or a decision so manifestly against what is clearly established by evidence as not to be, in any reasonable view, attributable to error of judgment, is jurisdictional error; and that where the board applies its judgment to the evidence and reaches a conclusion which is against the great weight of evidence, "if there be any reasonable ground for belief it is the result of honest judgment, it cannot be disturbed."

Boards of review up to the dividing line between what is called jurisdictional error, error in the exercise of discretion, and judicial error, have ample opportunity to make erroneous decisions from which the aggrieved party has no opportunity for relief. If a remedy should be afforded in such cases the only source from which it can legitimately spring is legislative power. The court cannot give it by changing the scope of the common-law writ of *certiorari,* and has never attempted to. That was very distinctly declared in *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188. There,

after citing numerous adjudications of this court, it was said that:

"If a board in reaching a determination is required to act upon evidence and it acts without evidence, or any evidence warranting the result in any reasonable view thereof, or if it is required to receive evidence and refuses to do so, it commits a clear violation of law and jurisdictional error, and its final determination may be challenged by a writ of *certiorari,* and held void upon that ground if the error appears of record."

In *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N. W. 359, it is said in effect that, at the outset, in dealing with an assessor's valuation before a board of review "it is presumed, in the absence of evidence to impeach it, to be correct." There must be some substantial basis in the evidence to overcome that presumption, or such valuation cannot be disturbed. Upon evidence being produced in that regard to be considered with evidence supporting such presumption, and a decision thereon being made by the board according to their judgment, "no mistake or error in so doing made honestly could warrant judicial review of the decisions." The cases to the same effect in this court are numerous. *Shove v. Manitowoc,* 57 Wis. 5, 14 N. W. 829; *State ex rel. Smith v. Gaylord,* 73 Wis. 306, 4 N. W. 518; *State ex rel. Heller v. Lawler,* 103 Wis. 460, 79 N. W. 777; *State ex rel. Giroux v. Lien,* 108 Wis. 316, 84 N. W. 422; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797.

So, obviously, it is useless to make that careful study of the evidence which counsel urges us to make, for the purpose of determining whether it preponderates in favor of or against the decision of the board of review upon any particular point. We must look into the evidence far enough to see whether in any reasonable view thereof, in the light of correct rules of law, it furnishes a substantial basis for the board's action. Having discovered that, as to any matter, we shall have exercised our legitimate function in respect thereto.

Manifestly since the trial court passed adversely on the contentions of counsel, the want of a legitimate basis in the evidence for the board's decision must appear here very clearly and satisfactorily or it should stand, though it may seem clearly against the great preponderance of the evidence.

The earnest appeal of counsel for appellant for this court to broaden out the use of the common-law writ of *certiorari*, if it has not done so, to meet new conditions, said to have developed from the administration of new legislative schemes for discovering property subject to taxation, and greater pressure upon public officers than formerly in that regard, causing them to suppose themselves adversaries of property owners, instead of appreciating that their true function is to protect such owners as well as the public, and when acting as a board of review, to exercise in spirit as well as in form the judicial function, cannot, legitimately, be responded to, even if it be true that the necessity for a new remedy or the broadening out of an old one is as great as the learned counsel suggest. All the court can do is to afford to litigants the use of such remedies as the law gives. It may be that they are somewhat too limited, as regards dealing with mere legislative creations exercising *quasi*-judicial authority, such as boards of review. Though it may be that they would be found to be quite sufficient as to such boards, if property owners would more generally consider, as they should, that it is the duty of public officers, having to do with the assessment of property for taxation, to find and assess all property, made assessable by law, and instead of obstructing aid them in the performance of their important and often difficult duties, by at least making full and fair disclosures of their property, as the letter and spirit of the law requires. It is probably true that boards of review often do not appreciate that the law requires on their part the exercise of judicial functions to the end that the interests of the property owners as well as those of the public, may be properly guarded, and that they assume an air

of suspicion and hostility toward such owners. It is quite as likely, however, that such attitude is induced by an air of apparent hostility on the part of such owners. But it is by no means improbable that the present legislative plan would be ample to vindicate the rights of all, with reasonable certainty and satisfaction, if the boards of review would so administer it, and property owners would so submit thereto as to give full effect to the same, instead of violating it by assuming an attitude of hostility, each toward the other. However it might be, as before indicated, this court cannot extend the ancient scope of the common-law writ of *certiorari* to remedy the difficulties complained of in this case and similar difficulties said to exist. If, as counsel argue, "it is useless to review the evidence, if after doing so, the court is powerless to grant relief against a decision which is contrary to the clear preponderance of the evidence," then the practice of all the courts in the land in the use of the writ of *certiorari* and the writ of *habeas corpus* and in the treatment of findings of fact by juries is all wrong. As before indicated, any reformation in that regard, if the exigencies of the present condition require one, must come from the lawmaking power, not from those charged with applying the law as they find it.

Several instances are cited to our attention where the assessor's valuation was corroborated by evidence, while there was evidence on the part of the relator establishing, if true, a much lower one, and the board did not adopt either, but decided upon a valuation between the two. The idea of counsel is, as we understand it, that the board was bound under such circumstances to accept as true, the evidence upon one side or that upon the other, and to do neither by fixing a value between two extremes was not an exercise of judgment, but an arbitrary conclusion disregarding the evidence on both sides. If that be correct then most of the decisions upon matters of fact by boards and juries and judges, especially where the decisions are necessarily based on opinion evidence, are arbitrary.

Counsel's proposition is wrong,—manifestly so. True, when the nature of a controversy is such that the truth is easily determinable to a reasonable certainty by mathematical demonstration, and the body called upon to decide proceeds otherwise to an erroneous result, there is no room for saying that such result was reached by the exercise of judgment. An instance of that is found in *New Home S. M. Co. v. Simon*, 107 Wis. 368–379, 83 N. W. 649. But on questions of damages, necessarily determinable on conflicting opinion evidence, the universal practice is to determine the truth of the matter by the exercise of judgment within the range thereof.

Serious complaint is made of the action of the board in deciding upon the assessable value of the relator's sawmill property. It is said that the evidence on relator's side was consistent with the statutory basis for valuing the property, while that in support of the assessor's valuation was on an illegitimate basis. True, as counsel claims, in such circumstances there is no conflict and the evidence on the side supporting the correct theory should be regarded as the sole evidence to base a decision on. *Batavian Bank v. North*, 114 Wis. 637, 90 N. W. 1016. But we are unable to discover that the situation which counsel suggests existed. The evidence on the relator's part bore mainly on what the sawmill property was worth to disorganize it and dispose of the parts. That on the other side bore mainly on what the property was worth as an entirety and in its going condition. The relator and his witness testified that there was but little timber tributary to the mill; that it would probably not run for more than a year, and that the machinery would not sell for more than from $6,000 to $8,000. One witness testified that he would make no difference, in valuing the property, whether there was or was not further use for the mill in its then location, showing clearly that his valuation was fixed solely in contemplation of what could be obtained for the machinery by disorganizing the plant. That was not a fair way to determine the value of the

property. It was very far from the statutory basis. It would not, if adopted by the board, have resulted in valuing the mill plant at all. The proper way was to consider the plant as an entirety, the mill, the land upon which it was located, the planing mill, the lumber yard, the means of reaching the plant with logs and moving the lumber therefrom and all the accessories and things for and in use in and about the property and belonging thereto, or affecting its value, including of course the facilities for obtaining logs to keep the mill in operation. The ultimate standard of value was "the full value that could ordinarily be obtained for the property at private sale." In reaching that necessarily one had to consider that the property derived its value largely from its character as a combination fitted for a manufacturing industry, its location, the opportunity to continue such industry, the advantage of doing so and many other circumstances. The statute, sec. 1052, Stats. 1898, so provides. The idea that a sawmill property, costing $29,000 for the erection of the mill itself, with its lumber yard, planing mill and all that goes to make up a complete plant in a going condition, with the certainty of there being use for it for a year at least, possibly longer, should be valued on the basis of what the machinery would sell for, is certainly not consistent with the statutes. What could ordinarily be obtained for the plant under all the circumstances, that was the question, not what could be obtained for the material composing it. The evidence on the part of the relator did not present any definite basis in that regard. Counsel says that the evidence to support the assessor's valuation was on an entirely wrong theory. In our view it was much nearer the legitimate basis than that on the part of the relator. The witness chiefly relied upon by the board, when pressed to state what standard he adopted in giving his valuation, said it was "what the property would ordinarily sell for at private sale, assuming that a buyer, with the same opportunity for the use of that mill as the present owner, was at

hand and had the means to buy it." The assumption in that hypothesis, that property valuable to one would be of substantially the same value to another, under the same circumstances, and that where one controls, for the purposes of sale, both the property and the circumstances affecting its value so that he can sell the former with the advantage of the latter, can ordinarily obtain at private sale the value, having reference to such circumstances, and that where there are sellers of property there are ordinarily customers, is by no means unreasonable. The evidence in support of the valuation placed on the property by the assessor was much more helpful than the evidence produced by the relator. We shall not discuss the evidence on either side in detail. Since the contention of counsel that the evidence on the part of the relator established the value of the property on a correct basis, and that the opposing evidence was on an entirely wrong basis, must be disapproved; and the contention that we can legitimately overturn the decision of the board upon coming to the conclusion that the evidence merely preponderates against it must be disapproved, there is nothing left that need be said. Assuming such two propositions to be wrong, it would doubtless be conceded that there is some legitimate basis to be found in the evidence for the conclusion which the board of review reached.

Particular complaint is made of the decision of the board as to the valuation of the lumber stock which the relator had on hand May 1, 1903. In support of the assessor's valuation evidence was given by witnesses who counted the lumber in a few of the full piles and determined the average amount in such a pile, and applied that standard to the number of like piles which, in their judgment, all the lumber in yard would make, taking a general view of and counting up the broken piles to enable them to make an estimate in that regard. The relator gave evidence by a witness who claimed to have estimated the lumber by treating every pile in the same manner the other witnesses did the few in order

to obtain a basis as aforesaid, finding by that method 7,211,270 feet. The amount found by the other witnesses was 10,493,600 feet. Neither of the results could be called more than an estimate. True the method adopted by the relator's witness was better calculated to reach a correct result than the other, but it was only an estimate. If the result by one method had not been much different from that by the other it is quite likely that the board would have reached a different conclusion than it did. We cannot decide that the one adopted by the assessor and his assistant was so unlikely to reach an approximately correct result that the evidence thereof was not entitled to consideration at all. The difference between the two estimates was so large that the board may have concluded that it was not reasonably attributable to a faulty method by the assessor but happened through mistake, either by the witness upon one side or witnesses on the other.

Another of the most important decisions complained of by the relator is one in respect to the value of his sawlogs. He estimated the amount thereof on May 1, 1903, by taking from the log stock secured for the season, being 8,187,770 feet, the amount of lumber manufactured therefrom, on an estimated cut of the mill from such logs of 50,000 feet per day for the time the mill was operated prior to May 1, 1903, making 5,300,000 feet, leaving a balance of logs subject to assessment of 2,887,770 feet. He said the entire cut of the mill was from 70,000 to 90,000 feet per day, and that he estimated the logs in question furnished 50,000 thereof. It will be seen that such evidence did not furnish a very definite basis for a decision. It did not furnish a much more satisfactory basis, if any, than the evidence produced in support of the assessor's valuation of an estimate made by taking a general view of the logs. Some criticism is made of such evidence. Without referring to it in detail, the general effect thereof, in our judgment, is that the estimate

made by the assessor was on such a view as the one suggested. The relator did not furnish the board any evidence of the amount of lumber actually cut out of the logs, nor any evidence of how the scale of the lumber compared with the log scale. That it ordinarily does not compare very accurately is notorious among people at all familiar with such matters. A twenty per cent. overrun in lumber from the log scale made by Scribner's rule, which may have been the case, would explain the difference between the assessor's and the relator's estimate, if the amount of lumber cut out of the log stock was as the relator testified. Enough has been said on the subject to indicate clearly that the board was not entirely without warrant in reaching the conclusion which it did.

It does not seem necessary to further review in detail the conclusions reached by the board of review, which the relator complains of. The evidence as to each has been sufficiently examined to enable the court to see that in all instances where the board made a decision in respect to any matter complained of, it had some legitimate ground therefor. We have not overlooked counsel's complaint that the supervisor of assessment was really the assessor, and was permitted to furnish evidence before the board of review to sustain his work. True, such supervisor had no business to make the assessment of the relator's property, or any other property. When he took the place of the assessor and substituted his judgment for that of the proper officer he went outside of his legitimate sphere. The law contemplates now, the same as it did before there was any supervisor of assessment, that the assessment of property for taxation shall be made by the assessor. However, the supervisor was a competent witness to give testimony before the board of review. The fact that in giving such evidence he was in the attitude of supporting his own judgment, recorded on the assessment roll, went to its weight, but not its competency.

*By the Court.*—The judgment is affirmed.