THE STATE EX REL. J. S. STEARNS LUMBER COMPANY, Appellant, vs. FISHER, City Clerk, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*February 1—February 21, 1905.*

*Taxation: Saw logs: Place of assessment: Valuation: Board of review: Evidence: Decision: Reversal on* certiorari.

1. Under sec. 1040, Stats. 1898, saw logs which are manufacturers' stock are to be assessed where located on May 1st, unless at that time it was the purpose of the owner to have them sawed or manufactured in some mill in this state, in which case they are to be assessed where such mill is located.

State ex rel. J. S. Stearns Lumber Co. v. Fisher, 124 Wis. 271.

2. The determination of the assessor as to the place at which property is assessable, as well as his determination in respect to its value, when attacked before the board of review, is presumptively correct and should be overturned only upon definite evidence impeaching it.

3. The decision of a board of review upon a matter properly before it cannot be reversed on a common-law writ of *certiorari* merely because, in the opinion of the court, it is against a clear preponderance of the evidence. If the evidence affords a reasonable basis, from the standpoint of the board, for the decision the error is not jurisdictional.

4. The evidence in this case is *held* sufficient to support the decision of the board of review, sustaining the assessor's determination, that on the 1st of May the owner of saw logs purposed having them sawed at the place where they were assessed, although on that day they were located elsewhere.

5. Testimony of the owner's agent that two fifths of a quantity of logs were worth only $5 per M., together with his refusal to state the value of the remainder, did not so impeach the assessor's valuation of the whole quantity at $10 per M. as to make it a jurisdictional error for the board of review to uphold that valuation.

Appeals from a judgment of the circuit court for Ashland county: John K. Parish, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of defendant.*

The plaintiff sued out of said court a writ of *certiorari* to review the proceedings of the board of review of the city of Ashland respecting its property there assessed for taxation in 1903. The petition was to this effect: In May, 1903, the assessor of the city of Ashland, in Ashland county, Wisconsin, assessed for taxation 5,000,000 feet of logs belonging to the petitioner, valuing the same at $10 per M. Such logs were, subsequent to the 1st day of May, 1903, removed from the town of Sanborn in said county to Mowatt's mill in said city of Ashland. Prior thereto and ever thereafter petitioner's principal place of business was in said town, where it owned and operated a sawmill. Seasonably after such assessment the petitioner, before the board of review, protested against the same because the logs were assessable in the town of San-

born instead of the city of Ashland, and 2,000,000 feet thereof were hemlock, worth not to exceed $5 per M. feet. In support thereof L. K. Baker, on behalf of the petitioner, testified to the character and value of the logs as stated; that no contract existed on the 1st day of May, 1903, for sawing the logs; that they were not in the city of Ashland on such day. The board denied the petitioner's application to reduce the assessment or strike the same from the assessment roll.

The return to the writ was to the effect that the logs were assessed to the petitioner; that he seasonably protested against the same, and that the board refused to change the assessment, basing its decision upon evidence returned which, so far as necessary to indicate whether the board committed jurisdictional error or not, is substantially as follows:

*Mr. Baker's evidence:*—May 1, 1903, the logs in question were in the town of Sanborn, mainly on the banks of Lake Superior. We had no arrangement about sawing them on that day. I cannot say that I knew on that day where they were going to be sawed. They were brought into the city of Ashland about the 5th day of May, 1903. 2,000,000 feet thereof were hemlock, not worth to exceed $5 per M. feet. I can't say just how much they were worth. The logs were reservation logs and had to be sawed on the reservation unless the government permitted us to saw them elsewhere. We had a mill in the town of Sanborn on the reservation where we had our headquarters. I did not know on the 1st day of May that the logs would not be manufactured there. It was much more convenient to manufacture them elsewhere, but it was not impossible to move them to the Sanborn mill. I cannot say that it was, on the 1st day of May mentioned, not deemed probable that the manufacture would occur at said mill. There was no practicable way of moving the logs to a place for manufacturing the same, other than by rafting them. We could have taken them in rafts to the Sanborn mill. I did not know but what we would have to. I can't say whether

we got permission to manufacture the logs in Ashland by May 5, 1903. I can't tell positively.

The matter was heard on the return, resulting in a decision that the assessment of the logs at $50,000 was contrary to the evidence, and that the valuation was excessive to the extent of $10,000. Thereupon judgment was rendered affirming the assessment at $40,000, and otherwise reversing it. Therefrom both sides appeal.

*George F. Merrill,* for the petitioner

*F. J. Colignon,* for the defendant.

MARSHALL, J. The logs were assessable in the city of Ashland, if on the 1st day of May, 1903, it was the purpose of the owner to have them sawed at some mill in that city, otherwise they were assessable in the town of Sanborn where they were located. Sec. 1040, Stats. 1898, states that unmistakably in these words:

"Manufacturers' stock . . . shall be assessed in the district where located. Saw logs and timber which are to be sawed or manufactured in any mill within this state which is owned or leased by the owner of such logs or timber or in which such logs or timber are to be sawed or manufactured by or for the owner thereof shall be assessed as manufacturers' stock in the district where such mill may be located. . . . No change of location or sale of any personal property after the first day of May in any year shall affect the assessment made in such year."

The logs were manufacturers' stock. The principal place of business of the owner in this state was in the town of Sanborn, in Ashland county. The logs were to be manufactured in this state. Their location on the 1st day of May, 1903, in such town fixed their *situs* for taxation for such year, unless the same was other than such town by reason of a formed purpose existing on such day to saw them at a mill determined upon elsewhere. No condition created after that day enters into the question of where the property was taxable.

It was the duty of the assessor in the first instance to determine the proper *situs* of the property for taxation. His determination thereof, as well as that in respect to the value of the property, in the controversy before the board of review, was presumptively correct. It could only be overturned by some definite evidence impeaching it. The mere fact that his decision was challenged by the property owner by no means cast upon him or the municipality the burden of justifying it. It was the duty of the board to regard such decision as a verity in the absence of definite evidence supporting the allegations in opposition thereto. By no other rule would it be practicable for boards of review to deal with the multitude of protests which might be made before them by property owners. Furthermore, it must be remembered, in dealing with a matter of this sort, that when the decision of a board of review is challenged as not justified by the evidence the real ground of complaint is jurisdictional error, and to constitute such error it must appear that the evidence was so overwhelmingly opposed to the decision that after giving thereto all the weight which it will reasonably bear, keeping in mind that the board has the same advantage over a reviewing tribunal as regards determining the truthfulness of evidence that a trial court possesses, there is no reasonable ground for the decision to rest upon. Where there is evidence tending both ways on a proposition for discussion affording a reasonable opportunity for the exercise of judgment in respect to the matter the board has jurisdiction to act, which means that it has jurisdiction to err as to what is the real right of the matter, and there is no redress for the error, if one is committed, by common-law writ of *certiorari,* which goes only to jurisdictional errors. *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188; *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N. W. 359; *State ex rel. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048. So it is not permissible in reviewing the proceedings of a board of review on such a writ for the

circuit court to investigate the evidence upon which the board acted to determine upon which side of the controversy it preponderates and to decide accordingly. Its duty is fully performed, except as to the rendition of the proper judgment, when it proceeds far enough to discover that there is a reasonable basis, from the standpoint of the board, for the decision which it rendered. Having reached that conclusion, an affirmance of the judgment challenged should follow, though the court may yet be of the opinion that the evidence before the board clearly preponderated contrary to its finding. The cases to that effect decided by this court are numerous and are in the main referred to in *State ex rel. Foster L. Co. v. Williams, supra.*

It seems probable from the record that the learned trial court did not appreciate the principle last discussed, and supposed that it was permissible for it to reverse the decision of the board if merely found to be contrary to the clear preponderance of the evidence. So recently as the time of the presentation here of the case last cited able counsel insisted that such was the trend of the late decisions of this court. That such was a mistaken and moreover a baseless view of such decisions, we took considerable pains to demonstrate, to the end that the danger might be avoided or removed, if any such danger existed, of the trial judge being misled thereby. In the record before us the learned judge in reversing the decision of the board used language appropriate to a conclusion that it was against the clear preponderance of the evidence, instead of that it was wholly unsupported by the evidence.

Now on the subject of whether on the 1st day of May, 1903, the owner of the logs purposed having them manufactured in the city of Ashland, the circumstances very strongly support the determination of the assessor. It was clearly shown that the difficulties in the way of transferring the logs to the owner's mill in the town from where they were located were so great that it was highly improbable that any such pur-

pose existed. It was shown that within four days after the 1st day of May the logs were put into the water, prepared for transportation, and were actually delivered at the Ashland mill to be manufactured. The work of rafting such a quantity of logs, arranging for their transportation, and actually making the transit from the bank to the mill is so great as to strongly indicate that the purpose to move the logs to Ashland on or prior to the 1st of May must have been formed. It is highly probable that the owner's agent knew definitely about the matter, yet he refused to testify to any reasonable degree of certainty in respect thereto. Considering all the circumstances from the standpoint of the record alone, we are unable to discover any definite evidence that the purpose of the lumber company was not as early as May 1st formed to have the logs sawed at Ashland. On the contrary, the evidence seems to pretty strongly indicate that such a purpose did then exist. If the fact be otherwise, we are utterly unable to understand why the witness Baker did not squarely say so, and testify to the existence of circumstances consistent therewith. The board of review was warranted in deciding that there was no reliable evidence to impeach the assessor's determination. But if that were not so, the trial court was not warranted in concluding that there was no substantial basis for the board's decision, and that it therefore acted outside of its jurisdiction.

On the question of whether error was committed in reversing the decision of the board as to the valuation of the logs there seems to be less difficulty than as to the one already discussed. As we have already intimated, the learned court seems not to have fully appreciated that only such a departure from the evidence on the part of the board as, under rules governing the subject, constitutes jurisdictional error, was fatal to its decision. *Prima facie,* as we have seen, the valuation of the logs made by the assessor was right. No evidence was produced before the board that the logs on the average were not worth $10 per M. The evidence rather tended to cor-

roborate than to impeach that.    It might well be true that two fifths of the logs were worth $5 per M., and the rest worth enough in excess thereof to make the average price $10 per M.    The owner's agent testified frankly that the pine logs were worth more than that figure, but when pressed to state the full value thereof he declined to do so.    That refusal strongly indicates that the valuation by the assessor upon the average was correct.    We are unable to see any basis whatever for holding that there was evidence impeaching such valuation so conclusively that the decision upholding it was jurisdictional error.

From the foregoing it follows that the judgment upon the appeal of the plaintiff, the *J. S. Stearns Lumber Company,* must be affirmed, and upon the appeal of the city clerk of the city of Ashland it must be reversed, and the cause remanded with directions to enter · judgment affirming the decision of the board of review, with costs in favor of such clerk.

*By the Court.*—So ordered.