STATE EX REL. ILSLEY and another, Executrices, Appellants,
vs. LEUCH, City Clerk, Respondent.

*March 20—April 9, 1914.*

*Taxation: Assessment of property omitted in previous years: Change*
*of domicile: Board of review: Jurisdiction: Findings, when con-*
*clusive.*

1. A finding by the board of review, in making assessments (under
   sec. 1059, Stats.) of property omitted in previous years, that
   the owner was a resident of the taxing district, being a finding
   going to the jurisdiction of the board, is not conclusive on re-
   view and cannot be sustained unless it has substantial basis in
   the evidence.
2. Upon the undisputed facts in this case it is *held* that personal
   property claimed to have been omitted from assessment in the
   city of Milwaukee was not taxable there, the owner having
   theretofore changed his domicile from the city to the town of
   Milwaukee. The mere facts that he continued to have a busi-
   ness office in the city and that he moved into the city tem-
   porarily in the winter, he being about seventy years old, were
   not inconsistent with an unmistakable effectuated intent to es-
   tablish his residence in the town.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

The appeal is from a judgment affirming, on *certiorari,* as-
sessments made by the board of review of the city of Milwau-
kee against relators as executrices of the will of Edward Brad-
ley, deceased, for property omitted from taxation in said city
in the years 1910 and 1911, during the lifetime of the testa-
tor.

It appears from the evidence taken before the board of re-
view that Mr. Bradley was domiciled in the city of Milwau-
kee from 1874 to May, 1909, when he moved to his country
residence in the town of Milwaukee. He continued to oc-
cupy a business office in the city jointly with his brother. In
1903 he sold his expensive city residence and built one in the
country, costing $35,000. This burned down before it was

ready for occupancy, and in 1908 he began building another, suitable for living in the whole year. In May, 1909, he moved into it and resided there till December 31, 1909, when he went to Washington and other places, spending part of the time at the Hotel Pfister in Milwaukee. From May 1, 1910, to December 31, 1910, he lived at his country home. He then went to California and other parts for the winter, stopping occasionally for a few days at a time at the Hotel Pfister in Milwaukee. About May 1, 1911, he returned to his country home and lived there till February 1, 1912, when he moved to the city on account of the bad roads. He rented flats in his own name and lived there with his daughter, *Mrs. Ilsley,* until about June 1, 1912, when he returned to his country residence. The reason he did not return earlier in the spring was because of the installation of a sewerage system at his country home, which system was not completed till then. He continued to live at his residence in the town of Milwaukee till December 1, 1912, when he returned to his rented flats in the city, where he continued to remain until his unexpected death on the 26th of the same month. So far as known, it was his intention to return to his country residence in the spring of 1913. He made frequent and continuing declarations that his residence was in the town of Milwaukee after he moved there in May, 1909. Indeed, one of his avowed objects in changing his residence from the city to the town was to escape taxation in the city, as he thought he was discriminated against on his intangible property assessment. In May, 1910, he informed the city assessor that he was no longer a resident of the city, and he paid no more personal property taxes there except on office furniture owned jointly with his brother. He was assessed in the town of Milwaukee after 1910 on personal property other than intangible property, which the assessor of the town said was never assessed therein. His name was taken off from the voting lists in the city of Milwaukee on and after the fall of 1910. That

fall he offered to vote in the town of Milwaukee, but as his name was not on the lists he had to be sworn in. He found one qualified witness, went to look for another but did not return. In the fall of 1912 he voted in the town of Milwaukee at the primary and general election, but did not vote at the spring elections of 1911 and 1912. In his income tax statement made out in 1912 for the income of 1911 he gave the town of Milwaukee as his residence. His wife died in 1897 and he never remarried. His daughter *Mrs. Ilsley* occupied the rented flats with him in the city and lived with him part of the time at his country home.

The board of review, apparently largely upon the advice of the city attorney, refused to cancel the assessment by a vote of nineteen to ten. The assessment for 1910 was $1,069,600 and for 1911 was $1,143,800. The executrices are residents of different taxing districts in this state, and neither resides in the city of Milwaukee.

For the appellants there were briefs by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *G. H. Van Dyke* and *Douglas Van Dyke.*

For the respondent there was a brief by *Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, and oral argument by *Mr. Canright.*

VINJE, J. Assuming that the facts in this case bring the relators within the rule announced in *State ex rel. J. S. Stearns L. Co. v. Fisher,* 124 Wis. 271, 102 N. W. 566, that the assessment was presumptively correct and could be overturned only by definite and conclusive evidence impeaching it, yet we cannot escape the conclusion that there was no basis in the evidence upon which the assessment could rest. The finding attacked is one that goes to the jurisdiction of the board of review to act at all, not one confessedly made within its jurisdiction. The former finding stands upon a different basis from the latter, as was pointed out in *Borgnis v. Falk Co.*

147 Wis. 327, 359, 360, 361, 133 N. W. 209. It is not conclusive upon appeal. If it were, such boards could determine their own jurisdiction without the right of review by the courts, no matter how erroneous their action. It is only findings made within their jurisdiction that are conclusive if based upon some evidence, not findings determining jurisdiction. The latter must have a substantial basis in the evidence or they cannot be sustained.

In the instant case the trial court was of the opinion that the renting of flats by the deceased in February, 1912, living in them till the following June, and returning thereto in December, furnished a sufficient basis for the board's determination. In this the court erred. The renting of and living in such flats, as stated, in no wise contradicted the undisputed facts that the deceased intended to change his place of residence from the city of Milwaukee to the town of Milwaukee, and that such intention was effectuated by an actual removal of residence to the town in May, 1909, which continued uninterrupted till his death in December, 1912. His name was taken from the tax rolls in the city and placed upon the tax rolls of the town for personal property taxation. He voted in the town and ceased to vote in the city. In fact, he did everything that could, under his mode of life and business necessities, be done to effectuate his intent to change domicile.

The fact of a man having a residence in one taxing district and a business office in another is now so common as not to cast any doubt upon the question of residence. The same is almost true of the custom of residents of the country, who have a business office in the city, to move into the city temporarily for the winter months. Certainly in the case of the deceased, who was about seventy years old, such temporary winter residence in the city should not be held inconsistent with an unmistakable effectuated intent to establish his residence in the town of Milwaukee.

The question was suggested by respondent that the deceased should not be aided by the court in escaping just taxation.

The court can neither give nor refuse such aid.    All it can do is to declare the law upon the facts presented.    It appears in this case, however, that the chairman of the town of Milwaukee was present with his attorney before the board of review of the city and protested against the assessment of the estate in the city, claiming it was taxable in the town of Milwaukee. Thus it becomes a question of which taxing district is entitled to tax the estate, rather than a question of its escaping taxation.

The conclusion arrived at on the merits renders it unnecessary to determine the questions raised by the relators as to the constitutionality of the reassessment statute.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter a judgment canceling the assessments.