BATAVIAN BANK, Respondent, vs. NORTH, Appellant.

*May 13—June 19, 1902.*

(1) *Evidence: Opinions: Court and jury.* (2, 3) *Duress.* (4) *Checks: Presentation: Agreement to postpone.*

1. Opinion evidence as to an ultimate fact, based on a correct theory of the underlying facts, met by like evidence upon a wrong theory of such minor facts, does not create a conflict for solution by a jury.
2. Duress of a person is that condition of such person's mind, caused by wrongful conduct on the part of another, rendering the former incompetent to contract by the exercise of his own free will.
3. Any amount of persuasion to influence one to exercise his own will to some particular end does not constitute duress.
4. If a person gives his check to another on condition that it shall not be presented to the drawee bank for payment till funds are produced in such bank by the payment of a check given to it by such person upon another bank, he impliedly agrees that the latter check shall be paid within a reasonable time, and if, by his connivance or consent, or otherwise, it is not so paid, such other may present his check for payment notwithstanding, and upon its dishonor sue to recover thereon.

   [Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

Action on a $5,600 check drawn on the Continental National Bank of Chicago, Illinois, April 14, and dated April 26, 1900, payable to Ray S. Reid or order, and, as alleged, delivered to him for value at the date thereof and thereafter indorsed by him for value to plaintiff and dishonored, payment being refused at the drawee bank because there were no funds there to meet the same.

The complaint stated the facts indicated and all others requisite to a cause of action in plaintiff's favor to recover on the check the amount thereof with interest and costs. Defendant answered, admitting the genuineness of the paper,

that the same was not drawn against funds in the drawee bank, that none were deposited there to meet the same, and that nothing had ever been paid thereon. The answer put in issue the allegation of the complaint as to ownership of the check by plaintiff, and pleaded, in addition, two defenses, viz., that payment of the check was expressly made conditional on precedent payment of a check for $10,000, drawn by defendant on the Bank of Hudson, Wisconsin, and deposited in the Continental National Bank for collection; and that it was fraudulently obtained from defendant. The following, in effect, are the facts alleged as to fraud:

Defendant's father died about 1890, leaving an estate valued at $200,000, consisting mostly of notes secured by farm mortgages, to defendant, H. L. North, her brother, and her mother, in equal proportions. Such proceedings were duly had in respect to the settlement of such estate that about 1893 the residue, after paying all claims other than those of legatees and devisees, was assigned by the probate court of St. Croix county, Wisconsin, undivided, to the three persons named. Mr. North immediately thereafter took charge of the entire property and managed the same till a division thereof was made as hereinafter set forth. Defendant was about twenty years of age when her father died. She was then wholly unacquainted with business matters and so continued down to and inclusive of the time of the giving of the check in suit. She permitted her brother, without objection till 1895, to handle the common property as he saw fit, paying no attention to the business whatever, he paying her from time to time, for her personal expenses, such sums as she required. In 1895 she expressed a wish to have the property divided and her share set off to her so that she could handle it herself if she desired. She was advised to such course by Mr. Reid, who was then a practicing lawyer at Hudson, the home of the North family, and who was the county judge of St. Croix county when the estate was probated. Mr. North

prevailed on defendant to abandon the idea of having the
property divided and to permit him to continue to handle the
estate as he had been doing since it was assigned. Thereafter
he continued to manage the property till disturbed in that re-
gard as hereinafter stated, paying the expenses of all the par-
ties interested out of the common fund. In the spring of
1899, while defendant was staying with her cousin, Mrs. Sal-
mon, in the city of Chicago, Mr. North stopped payment upon
her checks—which were drawn upon the Bank of Hudson, of
which he was president and through which the money belong-
ing to the estate was handled—upon the ground that she was
spending money imprudently, notifying her to that effect.
She thereupon communicated with Mr. Reid, who was then
practicing his profession in the city of La Crosse, sending to
him Mr. North's letter and requesting an interview. In re-
sponse to such request Mr. Reid called on her at Mrs. Sal-
mon's, where a consultation was had, the latter taking an
active part in advising defendant as to obtaining control of
her property. Mr. Reid stated that a large amount of labor
would be required to accomplish her desire, and that the cost
thereof would be five per cent. upon the value of her property
and $500 for expenses; that five per cent. and expenses was
the usual charge for settling an estate and securing a division
thereof among heirs. Such statement was untrue. Subse-
quently defendant met Mr. Reid in St. Paul, by his procure-
ment, when, relying entirely upon the representations there-
tofore made as herein indicated, she authorized him to pro-
ceed to secure the possession of her property for her on the
terms stated by him at Mrs. Salmon's. Shortly thereafter
she repented and notified Mr. Reid not to proceed, whereupon
he notified her that whether he did so or not he should insist
upon the benefit of his contract. That influenced defendant
to reluctantly allow him to go on as agreed. He thereafter
fully performed his part of the contract, with the friendly co-
operation of Mr. North, though the latter did not approve of

his sister's course.   After the work was done, defendant gave
Mr. Reid a certificate of deposit for $5,350, issued by the
Bank of Hudson, and a check for $950 as compensation for
his services.   The check was paid.   Before the certificate of
deposit was presented for payment Mr. North discovered the
particulars of his sister's settlement with Mr. Reid and ad-
vised her to take advice as to the reasonableness of his charges.
She did so, and becoming satisfied that she had been deceived,
that the amount of labor done by Mr. Reid was much less than
he had represented, and that she had been charged a very
exorbitant amount for his services, requested him to return
the certificate of deposit and to make a bill to her for such
reasonable charges as would fairly compensate him.   He com-
plied so far as to return the certificate of deposit, but he neg-
lected or refused to render a bill for his services.   Thereafter,
in April, 1900, he met defendant at Mrs. Salmon's in Chi-
cago, he going there for the purpose of obtaining a settlement
of his claim.   He had previously, in conversation with de-
fendant's mother, said that unless his bill was settled he
would bring a suit and make public the conduct of Mr. North
as to his sister's property, which statement was communicated
to defendant.   At Mrs. Salmon's he stated to her that unless
his claim was settled he would bring a suit which would dis-
grace Mr. North.   Mrs. Salmon reported that to defendant.
Both statements were made for the purpose of having them
communicated to defendant and of coercing her into settling
Mr. Reid's claim against her will.   The result of the confer-
ence at Mrs. Salmon's was that defendant, while in such a
condition of fear lest her brother and family be disgraced
in the manner threatened by Mr. Reid that she was unable
to exercise her free will, and believing the only way to pre-
vent harm to her brother was to submit to Mr. Reid's de-
mands, gave him the check in suit, it being then agreed, as be-
fore stated, that the check should not be presented to the
drawee bank for payment till her check for $10,000, deposited
in such bank for collection, should be paid.

On the trial the evidence was undisputed that plaintiff was the owner of the check and entitled to recover thereon unless defendant was entitled to prevail upon some defense thereto set up in her answer. All evidence of a conditional delivery of the check was excluded upon the ground that it tended to vary the terms of a written instrument. The court decided that the evidence on the charge of fraud was insufficient to warrant a finding in defendant's favor in respect thereto. Accordingly, on motion of counsel for plaintiff, the court directed a verdict in its favor, upon which judgment was rendered for plaintiff, and defendant appealed.

For the appellant there were briefs by *W. F. McNally* and *Baker & Haven,* attorneys, and oral argument by *Mr. Mc-Nally* and *Mr. Spencer Haven.*

For the respondent there was a brief by *Bleekman & Bloomingdale,* and oral argument by *Ray S. Reid* and *F. N. Bloomingdale.*

MARSHALL, J. The first proposition presented by counsel for appellant is that there was evidence to carry the case to the jury on the issue of whether the contract, to pay five per cent. of the amount of appellant's property recovered for her of Mr. North, her brother, and expenses, was void because of misrepresentations made by Mr. Reid in respect to the customary charges for services of the kind he contracted to render, upon the faith of which such contract was made. It is not necessary to decide that proposition, so we will not discuss at length the evidence upon which counsel relies to maintain it. Mr. Reid's evidence is very positive and clear that he made no misrepresentations; that he merely assented to suggestions made by Mrs. Salmon, a relative of appellant and her trusted adviser, as to what would be a reasonable compensation for such services as it was understood he would be required to perform. His evidence is corroborated by that of Mrs. Salmon and by some circumstances. There is evidence

to the contrary, but the preponderance of evidence, we are
safe in saying, is decidedly against appellant's theory.   So
much does it preponderate that way, that if the case were to
turn on a decision of the question involved, we could not
easily reach a conclusion that a jury would be warranted in
deciding that the charge of fraud is clearly and satisfactorily
established.

If the contract as to the amount Mr. Reid was to receive
for his services were successfully impeached for fraud, since
he fully performed the same, rendering valuable services to
appellant, he was entitled to a reasonable compensation there-
for; and if the check in suit is not in excess thereof the ver-
dict was properly directed, leaving out of view, for the time
being, defenses which will be considered later.   As we con-
sider the evidence bearing on the value of the services, it is
substantially all in favor of respondent, to the effect that the
charges made were not excessive.   True, there was evidence
on the part of appellant, putting the value thereof at $600 to
$1,000, but it was given on an entirely false theory—the
theory that the services consisted merely of dividing between
three and four hundred thousand dollars' worth of property
of the character of that in question by separating one third
thereof from the residue, the owner of such residue lending
friendly assistance, no strictly legal services being required in
the matter, and the time spent not exceeding about thirty
days.   That left entirely out of view the facts, which are un-
disputed, that the contract was made upon the theory that Mr.
North might have to be dealt with as an adversary from begin-
ning to end; that a resort to the courts for an accounting
might be necessary, involving an examination of his adminis-
tration of the property for many years; that he was known
to be hostile to any division of the property; and that the
amount of labor that would be required to investigate all his
operations and to fully establish the rights of appellant
might be incomparably greater than the labor of merely

dividing the property. The evidence also failed to give significance to the fact that Mr. North did not keep any books of account of his transactions; that he handled the undivided property as if it were all his own; that he changed the legal title to a large part thereof to his own name, so that it was impracticable for any one not learned in the law, and possessed of good business ability as well, to trace all that came to his hands from his father's estate in 1893, and the income thereof down to the time of the settlement, and determine with any reasonable degree of certainty the amount which justly belonged to appellant; that the situation was such that Mr. Reid, notwithstanding he had much special knowledge of the property as it existed in 1893, by reason of his having been then county judge of St. Croix county, where the estate was probated, was obliged to spend much of his time for months investigating North's transactions before being able to reach any satisfactory conclusion as to the amount which he should account for to appellant; and that he finally recovered for her some $37,000 more than appeared on the surface to him to be her share when he commenced his investigations. In that situation of the case the evidence given by appellant's witnesses as to the value of Reid's services cannot be regarded otherwise than worthless. The evidence on the other hand seems to have been based, quite fairly, on the proofs as to what Reid had reasonable ground to expect he would have to encounter when he took up appellant's business, the labor he actually performed, and the beneficial results to appellant.

The next proposition presented for consideration is that the check was obtained by duress, the means used to overcome appellant's will being threats, made by Reid to her mother and to Mrs. Salmon, to sue for a settlement of his claim and make public in the litigation conduct of Mr. North in the property matters which would tend to disgrace him, intending to have such threats communicated to appellant, and which were so communicated, and so terrorized her that in

the giving of the check she executed the will of Mr. Reid, or
his and Mrs. Salmon's, not her own. We have searched the
evidence in vain for some proof of duress that would warrant
a finding in appellant's favor. The situation, by the undis-
puted evidence, as we view it, when the settlement was made,
was that Reid had a claim against appellant which he had a
right to insist upon having settled in some way. For about
eight months he had been endeavoring to obtain a settlement.
He had good reason to believe that Mr. North was hostile to
him for thwarting the plan of keeping appellant's property
in his name and making her such an allowance from time to
time as in his judgment was necessary for her expenses, and
that he was bent on preventing her from settling the disputed
bill. She was twenty-nine years of age. She had become,
during the previous year, familiar with the amount and
value of her property. It exceeded in value $126,000. Mr.
Reid believed that the conduct of Mr. North in handling her
property was discreditable to him. She knew that, long be-
fore the time the threats are claimed to have been com-
municated to her. Reid had good reason to believe that a law-
suit between himself and appellant would be exceedingly un-
pleasant to her because of the publicity it would give to her
brother's conduct. It was proper for him, for a legitimate
purpose and under such conditions that it would not unduly
influence her, to inform her that his knowledge of her
brother's conduct would necessarily become public if he was
forced into a lawsuit. He made no statement about the mat-
ter to her, not even when negotiating with her in the presence
of Mrs. Salmon. What he said, of which complaint is made,
was said to her mother and to her relative, Mrs. Salmon, both
of whom, he had good reason to believe, would advise her ac-
cording to their judgment. He sought no interview with her
when she was not where she had the benefit of advice by some
one who, he had good reason to believe, was capable of advis-
ing her intelligently, and in whom she in fact had the fullest

confidence.   At the time of the settlement he met her at the
home of Mrs. Salmon, who acted in her behalf in all that trans-
pired.   Appellant admitted that she made the settlement with
deliberation, without much discussion or difficulty, and that
nothing occurred to excite her; that Mrs. Salmon advised her
in the matter; that when an agreement was reached Mrs. Sal-
mon suggested a plan for the payment of the money, which
was accepted; that Mrs. Salmon then produced some blank
checks and that she, appellant, made them out and delivered
the one in suit to Mr. Reid, taking a receipt from him evi-
dencing the settlement.   True, she said that the communica-
tions made to her, to the effect that if she did not settle the
claim a suit would be brought against her which would result
in disgracing her brother, influenced her to make the settle-
ment and to give the check; but that does not prove nor tend
to prove duress, in view of the fact that she considered the
question of the settlement with the aid of her friend, Mrs.
Salmon, and deliberately came to the conclusion which re-
sulted in the giving of the check.

Any amount of persuasion to influence one to exercise his
own will to some particular end does not constitute duress.
There was an honest controversy which called for a settlement
in some way.   It was perfectly proper for Mr. Reid to ex-
haust all reasonable efforts to that end by means of friendly
negotiations before resorting to a lawsuit.   There was no
attempt to obtain a settlement without appellant having the
advice of a person competent to aid her in the matter, and
nothing was said by Mr. Reid, directly or indirectly, to in-
fluence her to the conclusion which she reached, except what
he believed and had good reason to believe was true.   When
the settlement was consummated she executed her own will,
not his.   Admit that the menace of a lawsuit and unpleasant
notoriety as to matters concerning her affairs with her brother
were producing causes of her conclusion, that does not con-
stitute duress so long as such conclusion was in fact hers.   It

merely shows that she judged, from the whole situation, that she had better settle the controversy. If that could be called duress there would be very little stability to settlements *inter partes*.

Duress of a person is that condition of his mind, caused by wrongful conduct of another, rendering him incompetent to contract by the exercise of his own free will. *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495. There was no wrongful conduct of that kind in this case, as we have seen. The claim that there is evidence tending to establish duress is based largely on the theory that Mrs. Salmon acted in the interest of Mr. Reid while she pretended to guard the interests of appellant. We are unable to find any support for that in the record.

The last proposition advanced is that the evidence shows that the check was given, coupled with a verbal condition that it was not to be paid till the one given to the drawee bank, on the Bank of Hudson, was paid, and that, as the latter was not honored, the former never became an enforceable obligation ; and that the trial court erred in excluding the evidence offered to prove such condition. As we view the case, if the evidence had been admitted and the condition and check had been taken together as parts of one entire contract or transaction, the result would have been the same. So it is not necessary to pass upon the question of whether the evidence was improperly excluded. If appellant gave the check in suit on condition that it would not be presented to the drawee bank for payment till the $10,000 check was paid, it was, necessarily, impliedly agreed that the condition precedent should be satisfied within a reasonable time. The evidence shows that, if she did not actively connive at the dishonor of the $10,000 check, that event was in perfect harmony with her wishes, that she made no effort whatever to have it paid. We cannot avoid the conclusion that she was a party to the failure of the condition, if one existed, by either directing the

Hudson bank not to pay the check, or sanctioning her brother's conduct in that regard. That obviously precluded her from rightfully insisting upon such failure as a defense. She clearly breached her implied contract in the matter, and cannot invoke her wrongful conduct as a defense. The moment the condition, if there was one, upon which the check in suit was given, failed by her connivance or consent, it became binding upon her, discharged thereof, and upon its dishonor for want of funds in the drawee bank to pay it she became liable thereon.

*By the Court.*—The judgment is affirmed.