Park Falls Lumber Company and another, Respondents, vs. American Appraisal Company, imp., Appellant.

*January 15—February 9, 1926.*

*Taxation: Contracts of city to have appraisals made: Validity.*

A city of the fourth class has not the power to contract for the appraisal of certain taxpayers' property to assist the board of review in fixing the fair value thereof for taxation purposes, the city as such not being a taxing body, and the general scheme of taxation being laid down in the statutes.

Appeal from an order of the circuit court for Price county: G. N. Risjord, Circuit Judge. *Affirmed.*

This is an appeal from an order sustaining the demurrer of the plaintiffs to the answer of the defendant the *American Appraisal Company,* from which order the *American Appraisal Company* appealed.

This is a taxpayers' action to secure an injunction restraining the officers of the city of Park Falls from allowing and paying the claim of the *American Appraisal Company* against said city.

The city of Park Falls is a city of the fourth class. On the 9th of August, 1923, the council of the city of Park Falls passed a resolution authorizing the mayor and clerk to enter into a contract with the appellant, the *American Appraisal Company,* for the appraisal of the property of the Flambeau Paper Company, the *Park Falls Lumber Company,* and the Roddis Lumber & Veneer Company, each of such companies having large property interests in the city. The purpose of the city in securing such appraisal was to assist the board of review in fixing a fair valuation upon the properties of said three companies for the purposes of taxation.

Pursuant to said resolution, the mayor and city clerk entered into a contract with said *Appraisal Company* to make an appraisal of the properties of said companies for the city. Under its contract the *Appraisal Company* proceeded to make such appraisal, and after the completion thereof it presented the city of Park Falls with its bill for services under its contract for $4,962.63. The common council of the city was in favor of paying the bill, and would have allowed and paid the same had not the officers been enjoined from so doing by the institution of this action.

The complaint alleged that the plaintiffs were taxpayers, and brought the action in their behalf and in behalf of all other taxpayers, and then with all necessary details set forth the action of the common council, the contract, and the threatened allowance of the claim. The answer admits substantially all the allegations of fact in the complaint, and sets forth at length that the three companies whose property was to be appraised under the contract own approximately seventy per cent. of the taxable property in the city of Park Falls; that prior to the action of the common council there had been controversy between the officers of the city of Park Falls and said companies as to the taxes upon said

property, and there was litigation and threatened litigation with reference thereto; that the board of review was in session in the city of Park Falls at the time of said resolution, and the question of the valuation of the properties of said companies was before said board of review; that it was necessary for the board of review to ascertain the valuation of said property, and it was needful and necessary to secure an appraisal of the property for the purpose of aiding the board of review in its determination; that pursuant to said contract the *American Appraisal Company* did make such appraisal, and its appraisal was used before the board of review for the purpose of fixing the valuation on the properties of said companies; and it further alleges that it was commonly known among the citizens and taxpayers of the city of Park Falls that the *American Appraisal Company* was making said appraisal at the time for the uses and purposes alleged, and that no objection was thereto raised by any one until the commencement of the action; that the plaintiff *Park Falls Lumber Company* specifically consented to such appraisal, and that the *Appraisal Company,* pursuant to special request of the city officials, appeared before the board of review and gave testimony in connection with its appraisal of the properties of said companies, all of which facts were set out in great detail.

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

*W. K. Parkinson* of Phillips, for the respondents.

CROWNHART, J. The plaintiffs make the contention that the subject of the contract is not within the power of the city. Broadly speaking, it is contended that the subject of taxation is specifically covered by the statutes of the state, the method of taxation fully prescribed, and the powers and

duties with reference thereto are exclusively lodged in the public officers of the municipalities and the state.

On the other hand, the defendants contend that, to carry out its necessary functions of taxation under the power delegated to it by the state, the city had both express and implied power to secure expert assistance to be used before the proper city officials in making up the assessment roll for taxation.

The authority of cities of the fourth class is found in the general charter law of this state, ch. 62, Stats. Sec. 62.04 provides:

". . . For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that sections 62.01 to 62.26, inclusive, shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof."

Sub. (5), sec. 62.11, provides as follows:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

Sub. (7), sec. 62.09, reads:

"(a) The corporate authority of the city shall be vested in the mayor and common council. . . ."

The powers thus conferred upon the common council are indeed very broad, but in construing such powers it must be noted that they are limited by the phrase "except as else-

where in the statutes specifically provided," and they are further limited by sec. 62.26, wherein it is written:

"(1) The general laws for the government of cities, villages and towns, the assessment and collection of taxes, . . . shall be in force in all cities organized under the provisions of chapter 62 except as otherwise herein provided."

Ch. 70 of the Statutes outlines step by step the course to be pursued in the assessment of property for taxation purposes. Sec. 70.01 provides:

"The valuation of property for taxation and the assessment and collection of taxes in all the towns, cities and villages of this state shall be made according to the provisions of this title unless otherwise specifically provided. If no provisions be otherwise made therefor, there shall be elected at the annual charter election one assessor for each assessment district. When there shall be in any town, ward, village or city, constituting a single assessment district, more than one assessor, the assessors therein in the discharge of their official duties shall act together as an assessment board, and the concurrence of a majority of such board shall be necessary to determine any matter upon which they are required to act. The term 'assessor' as used in this chapter is intended to embrace such board of assessors."

The duties and powers of assessors are definitely prescribed (sec. 70.06 *et seq.*). They may examine owners and other witnesses under oath as to personal property values (sec. 70.35), and "real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale" (sec. 70.32). When his rolls are laid before the board of review, before which he shall attend and give evidence (sec. 70.48), that body may raise or lower valuations, and in so doing require "the attendance of witnesses and the production of books, inventories, schedules, papers, or documents" (sub. (4), sec. 70.47) ; and a reassessment may be had under the jurisdiction of the tax commission (ch. 73).

In 1907 the legislature created the tax commission and gave it very broad and comprehensive powers to secure just and equitable assessment of taxes. By sub. (2), sec. 73.05, it is provided:

". . . Said commission shall have authority in its discretion to order a reassessment . . . to be made by one or more persons to be appointed . . . by said commission."

By sub. (2), sec. 73.02, it is provided:

"Said commission may appoint a secretary and may employ such other persons as experts and assistants as may be necessary to perform the duties that may be required of the commission. · . . ."

By sec. 73.03 it is provided:

"It shall be the duty of the commission, and it shall have power and authority:

"(1) To have and exercise general supervision over the administration of the assessment and tax laws of the state, over assessors, boards of review and assessors of incomes, and over county boards in the performance of their duties as county boards of assessment, to the end that all assessments of property be made relatively just and equal at true value in substantial compliance with law.

"(2) To confer with, advise and direct assessors, boards of review, county boards of assessment and assessors of incomes as to their duties under the statutes of the state."

By sub. (8), sec. 73.03, it is provided:

"To require individuals, partnerships, companies, associations and corporations to furnish information concerning their capital, funded or other debt, current assets and liabilities, value of property, earnings, operating and other expenses. . . ."

By sub. (12), sec. 73.03, it is provided:

"To carefully examine into all cases where evasion or violation of the laws for assessment and taxation of property is alleged, complained of or discovered, and to ascertain wherein existing laws are defective or are improperly or negligently administered."

By sub. (2), sec. 73.04, it is provided:

"The commission may, in its discretion, appoint one of its members, or its secretary or engineer, to act for it to investigate and make report upon any matter pending before it, and such member, secretary or engineer, may hold hearings, administer oaths to witnesses, take testimony and perform all duties necessary to carry his commission into effect."

Sub. (2), sec. 73.07, provides:

". . . The tax commission may in its discretion revalue such property and equalize the assessment without the intervention of a board of review, at any time before November first, of the year in which·such assessment is made. . . ."

Section by section the general scheme of taxation is laid down in the general statutes, and, as seen, they apply in cities of the fourth class by express provision of the city charter law. The power to assess a tax is not given to the city council, but, on the contrary, to the assessor; the power to review the assessor's assessment is not lodged with the common council but with a board of review. The city as such is not a taxing body. No doubt the legislature might authorize by general law different methods of valuations, as it has in cities of the first class.

The courts have contributed to the general scheme by upholding the acts of the various taxing authorities by applying strong presumptions of the regularity of their acts, and by refusing to set aside assessments where there is any competent evidence to sustain them. *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 197 N. W. 189; *Evenson v. State,* 186 Wis. 312, 202 N. W. 849.

This disposition of the case makes unnecessary a discussion of the other questions raised by counsel in their very excellent briefs.

*By the Court.*—The order of the circuit court is affirmed.