STATE EX REL. PARK FALLS LUMBER COMPANY, Appellant, vs. STAUBER, City Clerk, Respondent.
STATE EX REL. EDWARD HINES HEMLOCK & HARDWOOD COMPANY, Appellant, vs. SAME, Respondent.

*January 15—June 21, 1926.*

*Taxation: Assessment of sawmill properties: Evidence as to values: Competency of witnesses.*

1. To qualify a witness to testify as to the private-sale value of property he must possess a knowledge of the intrinsic properties of the thing and a knowledge of the state of the markets. p. 315.
2. The knowledge essential to qualify a witness to testify as to such value must generally be acquired by personal observation and not by mere hearsay. p. 315.
3. Witnesses who had no personal knowledge concerning sales of lumber company plants and who had not been engaged or worked about a sawmill and had no experience in the construction or operation of the same are incompetent to testify as to the private-sale value of lumber-mill equipment under sub. (1), sec. 70.32, Stats., for assessment purposes. p. 316.
   CROWNHART, OWEN, and STEVENS, JJ., dissent.

APPEALS from judgments of the circuit court for Price county: G. N. RISJORD, Circuit Judge. *Reversed.*

In four *certiorari* proceedings, all presenting but one and the same legal question, brought in the said circuit court, by stipulation but one return was made.

State ex rel. Park Falls L. Co. v. Stauber, 190 Wis. 310.

They involved a reassessment directed to be taken by the state tax commission before a board of correction and review of the tax assessment for the year 1923 of the *Roddis Lumber & Veneer Company* and of the *Park Falls Lumber Company* as to their respective lumber-mill plants, exclusive of the real estate, in the city of Park Falls, said county; and of the assessment of each company for the year 1924 by the board of review of said city. The *Park Falls Lumber Company* had changed its title in July, 1924, to that of the *"Edward Hines Hemlock & Hardwood Company,"* but for convenience the former name only will be used here. The following table illustrates the respective valuations of such improvements by the owners by Laidlaw & Halbert, on behalf of the respondent city, and the determination by the reviewing bodies respectively:

*Park Falls Lumber Co.*
1923.

| Owner. | Laidlaw. (Assessor) | Halbert. (Witness) | Board of Cor. and Review. |
|---|---|---|---|
| $200,000. | $500,000. | $550,000. | $325,000. |

*Park Falls Lumber Co.*
1924.

| Owner. | City Assessor. | Halbert. | City Board of Review. |
|---|---|---|---|
| $200,000. | $440,000. | $550,000. | $440,000. |

*Roddis Lumber & Veneer Co.*
1923.

| Owner. | Laidlaw. | Halbert. | Board of Cor. and Review. |
|---|---|---|---|
| $40,000. | $80,000. | $90,000. | $60,000. |

It was conceded that the values in 1923 and 1924 were the same.

The *Park Falls Lumber Company's* mill in question was built in 1909 to dispose of some 284,000,000 feet of standing timber to the east of Park Falls. This supply was exhausted in the year 1922 to 1923. The company bought

a plant at Rice Lake in 1919 which it has since operated, and in 1920 it bought up the Yellow River Lumber Company plant at Hayward, which shortly thereafter burned and was not rebuilt, and in 1923 they built another plant at Loretta and commenced operations there in 1924. The *Lumber Company* now distributes the work of manufacturing lumber from its present supply of timber among these three mills, they being on the same railroad and within a distance of eighty miles.

Other objections to these assessments were made but are not here urged.

Upon the hearing below the determinations of the respective boards in the four cases were sustained. From judgments quashing the writs relators have appealed.

For the appellants there were briefs by *W. K. Parkinson* of Phillips, attorney, and *William S. Bennet* of Chicago and *Olin & Butler* of Madison, of counsel, and oral argument by *Mr. R. M. Stroud* of Madison and *Mr. Parkinson*.

For the respondent the cause was submitted on the brief of *C. E. Lovett* of Park Falls, attorney, and *Bundy, Beach & Holland* of Eau Claire, of counsel.

The following opinions were filed February 9, 1926:

ESCHWEILER, J.   But a single question is presented on these appeals, and that is whether or not in the reassessment of the respective lumber-mill plants (exclusive of the real estate) by the board of correction and review appointed by the state tax commission as to the assessment for 1923, and by the city board of review as to the assessment for 1924, there was competent evidence upon which could be based the respective determinations.

On the hearing relators called to testify as to the price that could be obtained at private sale for these particular lumber-mill plants considered as improvements and as ex-

cluded from the value of the real estate upon which they stood, three witnesses: former State Senator C. H. Werden of Ashland, Wisconsin, with retail yards there and a Western lumber operation, not presently interested in either of the two companies to any material extent though actively connected with the *Edward Hines Company* from 1905 to 1914, who had been interested in lumbering in Northern Wisconsin and Michigan for many years and familiar with transactions involving the sale values of such plants; Mr. J. B. Coleman, present general manager of the *Roddis Lumber & Veneer Company*, and who had been for many years field man for the Northern Hemlock & Hardwood Manufacturers Association of Wisconsin and Michigan, and for over thirty years engaged in and about sawmill and wood-working plants in this state and who had visited many thousand such different plants; and W. B. Clubine, general manager for eleven years of the *Park Falls Lumber Company* and for over twenty years familiar with the lumber business in Upper Michigan. These three witnesses, to whose competency to testify on the subject no objection was interposed, each testified as to both of the properties and placed their estimates of sale values at amounts lower than those reached by the two boards, and equal to or higher than that claimed by the owners.

The several assessments affirmed by the trial court must stand, if they are to be supported, upon the testimony of A. J. Laidlaw of Ladysmith and C. A. Halbert of Madison. Mr. Laidlaw had been designated by the tax commission to undertake the reassessment for 1923. He had been for twelve years assessor of incomes for Rusk and Sawyer counties and had done assessment work and valuation of sawmills as well as other properties and had acted on boards of review. He spent considerable time in the summer of 1923 at Park Falls for that purpose, but because not feeling competent or qualified to place value upon these industrial

plants he requested the assignment by the state tax commission of some one else to assist him, resulting in the coming of Mr. Halbert, upon whose judgment he largely relied for assistance in making such reassessment.   Mr. Halbert, a civil engineer, had for eleven or more years been employed by the Wisconsin railroad commission, and quite largely during that period in making appraisals and determining values for public utilities.   Each of these witnesses testified on direct examination, in substance, that in making their respective appraisements each had in mind the rule that what was to be arrived at was the full value that could be obtained for the property at private sale, and so made their valuations.

On cross-examination it appeared, however, that neither had any personal knowledge concerning sales of lumber company plants.   Neither had been engaged or worked about a sawmill and had no experience in the construction or operation of the same.   Mr. Halbert, whose testimony was considered the more substantial of the two and the basis of Laidlaw's appraisal to a large extent, further testified to having made not to exceed six prior appraisals of lumber mills, and to his experience having been largely a matter of figuring out sound values on utility and other industrial plants in accordance with the policy of the Wisconsin railroad commission.   That this policy was substantially changed in 1915 from that theretofore used.   That by "sound values" he meant what a property is worth for insurance purposes or stock and bond issues as security against such equipment.   That public-service company rates take it away from the ordinary industry.   Both of these witnesses used in their consideration that which was stated to be a full and itemized inventory of the respective mill-plant equipments made by the American Appraisal Company and which was offered in evidence in the proceedings before the two reviewing bodies but which is not found in

the record here. It is undisputed, however, that such appraisal was as to each of the companies largely in excess of the appraisals by these two witnesses.

The city assessor, whose valuation for 1924 of $440,000 was adopted by the city board of review for that year, did not testify in support of such assessment.

Objection was interposed by relators to the testimony of Mr. Halbert and Mr. Laidlaw on the ground that they were not competent to testify on the vital question involved under the statute declaring the duty of assessors of real property, sub. (1), sec. 70.32, viz. that it shall be valued "at the full value which could ordinarily be obtained therefor at private sale." We think such objection should have been sustained. That this statutory rule is plain, direct, and must be followed even though in many cases difficulties are presented, has been frequently declared. *State ex rel. Northwestern Mut. L. Ins. Co. v. Weiher,* 177 Wis. 445, 448, 449, 188 N. W. 598; *State ex rel. Oshkosh Country Club v. Petrick,* 172 Wis. 82, 84, 178 N. W. 251; *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 649, 197 N. W. 189. The Minnesota court under a similar statute has taken the same view as stated by Mr. Chief Justice VINJE in *State ex rel. Northwestern Mut. L. Ins. Co. v. Weiher,, supra,* in its decision. *In re Taxes of Potlach T. Co.* 160 Minn. 209, 199 N. W. 968.

The two witnesses, Laidlaw and Halbert, did not possess sufficient knowledge of the subject matter, viz. the private sale value of lumber-mill equipment, to qualify them as competent witnesses. 2 Jones, Evidence (3d ed.) § 368. As stated by that learned author at sec. 387, the essentials are two: a knowledge of the intrinsic properties of the thing; a knowledge of the state of the markets. As stated by Wigmore (2d ed. § 717), "where there is a market value, the knowledge of the witness must be of this market value." *Berg v. Spink,* 24 Minn. 138. Such knowledge must gen-

erally be acquired by personal observation, not by mere hearsay. 1 Wigmore, Evidence (2d ed.) § 719; *Kost v. Bender,* 25 Mich. 515, 519; *Detroit v. Fidelity R. Co.* 213 Mich. 448, 455, 182 N. W. 140, 142.

In *Rylander v. Laursen,* 124 Wis. 2, 7, 102 N. W. 341, cited by respondent, the witness challenged testified that he knew the value of the logs for the loss of which suit was brought and had worked on such logs for fifteen years, though he never bought or sold any, and this court held he was competent to testify as to value. In *Greeley County v. Gebhardt,* 2 Neb. 661 (Unof.) 89 N. W. 753, also so cited, resident owners of farm property acquainted with the land in question may testify as to its value though no recent sales had been made. Also in *Muskeget Island Club v. Nantucket,* 185 Mass. 303, 70 N. E. 61, a witness was held qualified who had lived there for sixty years, who had traded in lands and had acted as assessor. We find nothing in these or the other cases cited by respondent on this point that makes them applicable to the situation here.

We are therefore of the opinion that the record discloses a want of sufficient competent evidence to sustain the assessments here presented for review and a disregard of competent evidence as to value, and for such want and disregard the respective boards of review exceeded their jurisdiction in making the assessments in question. *State ex rel. Northwestern Mut. L. Ins. Co. v. Weiher,* 177 Wis. 445, 188 N. W. 598; *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 651, 152 N. W. 450.

In *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429, relied upon by respondent, the assessor in his valuation as to the buildings and machinery used, in arriving at his result, the original cost less annual depreciation as charged off by the owner (p. 449), and the owner admitted inability to give evidence as to market value by transfer (p. 450).

For the reasons stated the judgments of the court below

must be reversed so far as they affect the assessments on the respective mill improvements only and as herein discussed. Other items of the respective assessments were sought to be reviewed in the court below, but such other items were not here presented and are not affected by this decision.

*By the Court.*—Judgments reversed, and causes remanded for further proceedings according to law.

CROWNHART, J. (*dissenting*). The opinion of the court seems to me to be out of harmony with former decisions of this court, and it makes it most difficult for the public officers to perform their duty in making a fair assessment for taxes. At the same time it makes it comparatively easy for owners of large properties, not dealt in on the market, to escape their just share of the burdens of government. I respectfully dissent as to each of the four cases involved, but I choose to write an opinion only in the case of reassessment of the tax on the *Hines* plant for the year 1923.

Sec. 70.32, Stats., determines how the assessor shall fix the value on real estate, to wit:

"(1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location. . . ."

This is a very plain statute. The village assessor made his assessment for 1923, but the tax commission was appealed to, to make a reassessment of the property of the village. The legislature, in creating the tax commission, intended to have a body of expert men to assist in making equitable assessments. The commission was therefore authorized to make reassessments in certain cases, and the statutes with particularity regulate the manner of making such reassessments. See ch. 73, Stats.

Complying with the statutes, the tax commission ap-

pointed one Laidlaw, who had had twelve years' experience in supervising assessments in Rusk and Sawyer counties, where there were sawmills and lumbering operations going on.   To assist the assessor, the tax commission appointed Charles Halbert, a civil engineer, who had had experience under the tax commission in determining values of sawmills and other property for assessment of taxes, and who had had large experience in fixing values of public utilities under the railroad commission.   The assessor so appointed, with the aid of the civil engineer, made his assessment under his oath of office.

Then the tax commission appointed three disinterested persons from without the taxing district as a "board of correction and review" (sec. 73.06)—ex-Senator Pearce Tompkins, supervisor of assessments for Ashland county; John Fordyce, an attorney from Butternut; and Joel L. Davis, formerly supervisor of assessments in Price county. The members of this board took the oath of office and held hearings in the fall of 1924.

The assessor had fixed the value of the mill property at $500,000.   After listening to the testimony the board of correction and review fixed the value at $325,000.   From this determination the *Lumber Company* sued out a writ of *certiorari* in the circuit court.   Judge Risjord, an able and experienced jurist in the lumbering field of Northern Wisconsin where tax litigation of this sort is notorious, sustained the findings of the board of correction and review.

The property, over the value of which this contest is staged, is a sawmill property in Park Falls, Price county. It is in evidence that sawmill property is valuable as such only as it is a going concern; otherwise it is valuable only as salvage.   The evidence is conclusive that this mill property is a going concern.   There seems to be no serious dispute that there is at least ten years' timber cut available to the mill.   Neither the assessor nor the civil engineer

knew of any sales of sawmill property under similar conditions to this plant, so they figured out the sound values of the properties, taking into account all the elements of value, depreciated those values according to use and present conditions, and then considered the property as a whole as a going concern, as to market value under the statute quoted.

The witnesses in behalf of the appellant were Clubine, manager of the mill and operations in question; Coleman, occupying a like position with the *Roddis Lumber & Veneer Company*, one of the contestants on this appeal; and ex-Senator Werden, each of whom had had general experience in the sawmill and lumbering business and knew generally of sales of sawmill properties. But it is clear beyond cavil that neither witness had ever known of the sale of sawmill property under the conditions of the property in question. Their testimony was absolutely valueless other than opinion evidence in the broad field of speculation as to probabilities or possibilities. Neither had any experience in assessing property for taxation; neither knew of a sale of property close in point of character, quality, location, time, or available supply of timber. The board of correction and review were not compelled to believe these interested witnesses who were giving opinion evidence not based on the necessary facts to qualify them to give a trustworthy opinion.

On the other hand, with reference to Mr. Laidlaw's qualifications it appeared that he was forty-nine years old; had resided in Wisconsin since 1907; had been assessor of incomes of Rusk and Sawyer counties for twelve years; had acted also as member of the board of review in quite a number of other districts where reassessments had been made; as assessor of incomes his work had been closely associated with assessment work and valuation of sawmill and other properties; had had considerable experience with the assessment and valuation of sawmill properties; that

there were two sawmills at Ladysmith, formerly three; the
Menasha Woodenware Company was operating there for a
number of years; there was the Flambeau River Lumber
Company and the Fountain-Campbell Lumber Company,
and outside of the city there was the Beldenville Lumber
Company at Bruce and the Arpin Lumber Company at At-
lanta, north of Bruce; then the Bekkedal Lumber Company
at Couderay; the North Wisconsin Lumber Company at
Hayward, and a few smaller plants; there was also a small
sawmill at Weyerhauser, and there used to be one at Ingram,
and other similar plants,—all in his assessment district; that
he counseled with the assessors with reference to the as-
sessment of these properties and also with others; had
talked with the various owners of sawmill properties and
discussed matters with them for assessment purposes; had
these matters up with the owners and assessors; attempted
in his work to get information leading to proper values to
be used for assessment purposes; the owners of the Bek-
kedal plant at Couderay and the Flambeau River Lumber
Company plant at Ladysmith and of the Fountain-Camp-
bell Lumber Company at Ladysmith, each gave him the
exact figures as to their properties; in addition to the Park
Falls reassessment, had made a reassessment at Gull Lake
in Washburn county; that he came to Park Falls on May
11, 1924, and remained until September 5, 1924, spending
about ninety days in making the reassessment; that during
that period he consulted the records of sales made in Park
Falls at that time and a reasonable time previous; had rec-
ords of sales of real estate in Park Falls; during the period
of reassessment also consulted with William H. Lippels,
the present assessor of incomes for Price county, as to his
knowledge of sales made in Park Falls; consulted with
E. J. Aschenbrenner as to his opinion of values of property
and sales made in Park Falls in 1923,—Aschenbrenner was
cashier of the State Bank and had resided in Park Falls

many years, and had been engaged in the real-estate busi-
ness there for about twenty years; during the period of
his reassessment also consulted with J. B. Saunders, cashier
of the First National Bank of Park Falls, and also in the
real-estate business for many years; consulted also with
the officers of the *Park Falls Lumber Company* and of the
*Roddis Lumber & Veneer Company* as to valuations, and
with a great many other business and professional men
who have been in Park Falls a great many years; consulted
also with Mr. Halbert, the engineer employed by the Wis-
consin tax commission to work with him in assessing the
city; consulted with Mr. Roddis, one of the relators, and
his manager, Mr. Ruhmer; in making his reassessment,
talked with the owners of the plants and applied the infor-
mation obtained in making his assessment; went through
the *Park Falls Lumber Company* plant very carefully and
worked and consulted with Mr. Halbert; would not con-
sider himself entirely competent to assess these plants,—
wanted some help, received the help, and with it felt the
assessment was fair and just.

Here was a specially appointed assessor, having special
fitness to make a just assessment, and whose judgment of
market values was far more competent than that of the wit-
nesses for the appellant, and here was a specially qualified
assistant to help the assessor.

Mr. Halbert was by profession a civil engineer, having
graduated in 1908; had been with the Wisconsin railroad
commission for about eleven or twelve years; before going
with the railroad commission was with the capitol building
commission and with a construction engineer at Madison
and with a heavy construction contractor; while with this
general contractor they built a heating plant, large store
buildings, utility buildings, and structures of that kind;
during the eleven or twelve years he was with the railroad
commission he was called upon by the tax commission to

aid in making assessments of taxable property, including four or five or six sawmill companies, and quite a few allied concerns like veneer plants; in these cases he was concerned with what property should be assessed at; had assessed or appraised about one hundred industries for assessment purposes; about forty per cent. of his time had been spent in making appraisals of utility and other industrial plants,— fixing not only sound values but what the property was worth for one purpose or another; about fifty per cent. of his time during his eleven or twelve years with the railroad commission had been devoted to appraising properties of different kinds; had appraised other properties, besides sawmills, for the owners; had, to a certain extent, been called upon by private individuals and concerns to make valuations of manufacturing institutions on which to base sales; went over two paper-mills in the last four or five years,— one in Minnesota, and the other in Wisconsin,—more particularly to get values for setting up depreciation in connection with income tax matters, which has to do with the cost or sales value; had been called on by private individuals to appraise properties to give testimony in court proceedings, along water-power lines, connected with various kinds of machinery, structures, and power stations; during the last fourteen or fifteen years had to make a study of construction costs, estimates, etc., of machinery and cost of installation; had in connection with that sort of work furnished the tax commission values for their use,—supplied them with tables on costs of buildings of different kinds; all of the construction work of the state was supervised by the state engineering department of which he was a member or employee, and some parts of that work had gone through his office; the rates for public utilities are based on appraisals made by the engineers of the railroad commission; in connection with his work he tried to keep up to date on prices that manufacturing institutions had been bought and

sold for; there is nothing about a sawmill which a competent engineer cannot figure; he examined the industrial plants of the city of Park Falls twice,—the first time in 1920 under employment of the city for that purpose, and the second time in 1924 in assisting Mr. Laidlaw in making his reassessment of the city.

The law has been repeatedly declared in this state that if there is any competent evidence to sustain an assessment, the courts will not disturb the action of the assessing officers upon a review by *certiorari*. *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 197 N. W. 189, and cases there cited; also, *State ex rel. Giroux v. Lien,* 108 Wis. 316, 84 N. W. 422; *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *State ex rel. Howe v. Lee,* 172 Wis. 381, 178 N. W. 471.

How can it be said there was no competent evidence to sustain the assessment? The assessor viewed the property, interviewed the owners, had an inventory, had access to the books, had the assistance of an able civil engineer who had had experience in fixing taxable values, inquired and found out about the timber supply, and both the assessor and his assistant testified that the values they fixed were in their judgment the full values that could ordinarily be obtained therefrom at private sale.

It is significant that the owner carried fire insurance on the property in excess of the value it gave to the assessor. Fire insurance does not cover land, basements, or underground work, and it is generally known that insurance companies will not insure this class of property at anywhere near its actual value.

There are properties on which no one in the world can estimate the market value based on sales of similar property under similar circumstances, because there are no such sales. This was such a property. And any witness who testified to such market value had no foundation on which

to base it better than that of the assessors and the expert board of correction and review.

As said by Mr. Justice OWEN in *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, at p. 450 (169 N. W. 429) :

"It is matter of common knowledge that large manufacturing establishments such as this are not subject to frequent transfers so that the market value could be established in such way."

And the president of the company, in that case, with commendable honesty, said: "I cannot testify as to what our plant is worth as a unit and as a going concern, because the purchases of anything of that kind are few and far between." With equal candor, Werden, Clubine, and Coleman could have said the same thing in so many words. But what they did testify to, no doubt, satisfied the expert board of review and the learned circuit court that the witnesses at best were giving a guess, largely based on bias. This expert board of appraisers and the circuit court had a right to rely on what this court said is matter of common knowledge,— that the market value of large business concerns cannot be ascertained from sales of like industries. The sales of similar industries under similar circumstances are not to be found.

It is said in *State ex rel. Pierce v. Jodon,* 182 Wis. 645 (197 N. W. 189), at pages 648, 649:

"It may be admitted that the property is not such as is ordinarily found on the market for purchase and sale. There is always great difficulty in ascertaining the market value of property of this character for that reason. Nevertheless, the assessment officers must ascertain the market value of the property from the best evidence obtainable, and place the same on the assessment roll accordingly. All that can be asked of assessment officers is that they act on the evidence and facts before them, honestly and without discrimination against such property. When this is done and the case is before us on appeal, we will examine the record to

State ex rel. Park Falls L. Co. v. Stauber, 190 Wis. 310. Dissent.

ascertain if there is any competent, credible evidence to sustain the valuations placed upon the property by the assessing officers, and if there be such, it is not our province to weigh the testimony to determine where the preponderance lies."

The result of giving so much weight to mere opinion of interested parties leaves the owner, in a case like this, the opportunity to make his own assessment, or by long, expensive, and tiresome litigation he can ruin the taxing district where, as here, three powerful corporations own two thirds of the property in the district, and have not paid taxes for 1923 or 1924.

In *Park Falls L. Co. v. American Appraisal Co.* 189 Wis. 239, 207 N. W. 300, we commented on the efficient method the legislature had provided to secure equitable taxation, but here we deny the efficacy of the scheme altogether, and leave the municipality practically helpless.

For the reasons above stated, I respectfully dissent.

I am authorized to say that Mr. Justice OWEN and Mr. Justice STEVENS concur in this dissent.

The respondent moved for a rehearing.

In support of the motion there was a brief by *C. E. Lovett* of Park Falls, attorney, and *Bundy, Beach & Holland* of Eau Claire, of counsel, the *Attorney General* and *Franklin E. Bump,* assistant attorney general, appearing for the State.

In opposition thereto there was a brief by *W. K. Parkinson,* of Phillips, attorney, and *William S. Bennet* of Chicago and *Olin & Butler* of Madison, of counsel.

The motion was denied, with $25 costs, on June 21, 1926.